## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTOPHER REDMON, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WHIRLPOOL CORPORATION,**<br><br>**Defendant.** | **Case No.**<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Demand for Jury Trial** |

## CLASS ACTION COMPLAINT

Plaintiff Christopher Redmon ("Mr. Redmon" or "Plaintiff"), by and through counsel, brings this Class Action Complaint against Defendant Whirlpool Corporation ("Defendant" or "Whirlpool"), on behalf of himself and all others similarly situated, who own or owned certain dishwashers designed and manufactured by Whirlpool and distributed, marketed, and sold by Whirlpool and Whirlpool's subsidiary and affiliates thereof, including, *inter alia*, KitchenAid, JennAir, Maytag, and Kenmore. Plaintiff, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, alleges as follows:

### NATURE OF THE CASE

1.      Whirlpool Corporation is a publicly traded, international conglomerate that touts that it is "the world's leading kitchen and laundry appliance company, with approximately $20 billion in annual sales, 77,000 employees and 59 manufacturing and technology research centers

in 2019."[1]  Within this Whirlpool umbrella exists numerous other household brand names, including KitchenAid, JennAir, Maytag,[2] and Kenmore.[3]

2.      Among a bevy of other home appliances, Whirlpool has designed and manufactured dishwashers for decades.  It currently boasts that it is the "industry's best-selling dishwasher brand."[4]

3.      In the last decade, Whirlpool designed and manufactured certain dishwashers in a substantially similar manner, which were sold under the following brand names and models: Whirlpool Gold® and Whirlpool Models beginning with BLB14DR, IUD750, IUD850, WDF5, WDF7, WDL785, WDT7, WDT9, WDTA5, and WDTA7; JennAir Models beginning with JDB8, JDB9, and JDTSS2; Kenmore Models beginning with 662.13, 665.12, 665.13, 665.14, and 665.15; KitchenAid Models beginning with KDFE1, KDFE2, KDFE3, KDFE4, KDTE1, KDTE2, KDTE3, KDTE4, KDTE5, KDTE7, KDHE4, KDHE7, KDTM3, KUDE2, KUDE4, KUDE5, KUDE6, KUDE7, KUDL, KDPE2, and KDPE3; and Maytag Models beginning with MDB8.  There are more than 900 models, including those listed here, which contain a defect described below ("Class Dishwashers" or "Dishwashers").

4.      The Dishwashers were and are marketed as "high-quality" products, with base retail pricing ranging from $500-$950.  Since at least 2015, as part of its marketing campaign, Whirlpool has boasted to consumers about the durability of these "high-quality"[5] dishwashers, claiming that "No One Has Fewer Repairs 18 Years in a Row."[6]

---

[1] https://investors.whirlpoolcorp.com/home/default.aspx (Last Accessed September 18, 2020).
[2] https://www.whirlpoolcorp.com/brands-we-love/ (Last Accessed September 18, 2020).
[3] Although Whirlpool manufactures dishwashers for Kenmore, Kenmore is not owned by Whirlpool.
[4] https://www.whirlpool.com/kitchen/dishwasher-and-cleaning.html (Last Accessed September 18, 2020).
[5] See Dishwasher User Instructions ("THANK YOU for purchasing this high-quality product.").
[6] https://web.archive.org/web/20150116052616/http://www.whirlpool.com/kitchen-1/dishwasher-&-cleaning-2/dishwashers-3/-[WDF760SADW]-1022282/WDF760SADW/ (Last Accessed September 18, 2020).

5.     However, Whirlpool designed, manufactured, distributed, marketed, and sold the Dishwashers with a uniform defect that can and has caused the Dishwashers to leak and damage consumers' cabinetry, flooring and other property.  The dishwashers were and are equipped with a pump motor diverter shaft seal ("Diverter Shaft Seal" or "Shaft Seal") oriented incorrectly, accelerating degradation of the seal and creating a buildup of debris that prevents the shaft seal spring from properly sealing the diverter shaft and sump. As a result of this uniform defect involving the failure of the Diverter Shaft Seal to seal off water between the diverter shaft and sump, Plaintiff's and Class Members' Dishwashers experience significant leakage through the Diverter Shaft Seal, flowing out of the dishwasher, damaging cabinetry, flooring, and other property.

6.     A Diverter Shaft Seal is part of a dishwasher's sump assembly, which is located at the bottom of the dishwasher's tub and is collectively responsible for collecting and distributing the water throughout the dishwasher during cleaning.  The sump collects and holds water below the dishwasher tub and the diverter shaft directs the collected water into the spray arms, while the Diverter Shaft Seal prevents leaks between the sump and the tub.

7.     Below is a representative parts diagram, with (4) being the sump and Diverter Shaft Seal assembly, and (17) the dishwasher's diverter motor.  The red circle specifically indicates the location of the Divert Shaft Seal.



8.     Upon information and belief, the Divert Shaft Seal's manufacturer's installation instructions direct the seal to be affixed in an orientation towards the tub so that there is protection from hot soapy water and debris during cleaning, and a complete and properly functioning seal.  However, Whirlpool designed and manufactured the sump and diverter motor pump assembly with the seal affixed in an inverted position, which exposes it to hot soapy water and debris.  As the debris builds and the seal degrades, water begins to leak between the sump and the tub, eventually leaking through the entire unit and onto floors and inside cabinetry.

9. A photograph of a degraded, failed seal:



10. Whirlpool has known for at least eight years that the Dishwashers contain one or more design and/or manufacturing defects, including but not limited to the defectively designed and manufactured sump assembly with the inversely oriented Diverter Shaft Seal in the Class Dishwashers ("the Defect").

11. The defective sump and diverter motor pump assembly in the Dishwashers exists at the time it leaves the manufacturer, and before it is purchased by consumers. Despite Whirlpool's longstanding knowledge of this defect, Whirlpool has failed to remedy the defect and also failed to inform consumers of the defect. Instead, in contravention of the Dishwashers' express warranty, which fails of its essential purpose and is unconscionable, Whirlpool has placed the burden of repairing this defect and paying for the costs of repairs to the adjacent personal property damaged by the defective Dishwashers upon the consumers.

12. Whirlpool's warranty states that within one year of the purchase date, Whirlpool "will pay for Factory Specified Replacement Parts and repair labor to correct defects in

materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product." Exhibit A.

13.     The KitchenAid, Maytag, and JennAir warranties are materially indistinguishable, if not identical to the Whirlpool brand dishwasher warranty. In fact, they are also expressly issued by Whirlpool or otherwise expressly acknowledge the company is a Whirlpool brand.[7] Likewise, Kenmore's dishwasher warranty contains nearly identical language to Whirlpool's.[8]

14.     Upon information and belief, regardless of whether the Dishwasher leaks during the warranty period or otherwise, and despite having sold the Dishwashers with a defect known to Whirlpool and unknown to consumers, Whirlpool refuses to replace or repair the Dishwashers and instead offers to sell a full sump assembly with a new Diverter Shaft Seal attached to it to the customer. As described in further detail below, the cost to repair the defective sump and diverter motor assembly is approximately $200.00 or more with installation costs, which is approximately 1/5-1/3 of the cost of the original Dishwasher.

15.     Upon information and belief, Whirlpool drafts all representations regarding the durability and quality of all the Dishwashers regardless of the brand.

16.     Prior to purchasing the Class Dishwashers, Plaintiff and other Class Members did not know that the Class Dishwashers have a defective sump and diverter motor pump assembly and would fail, leak, and cause damage to their floors and cabinetry. Further, even

---

[7] *See* https://www.kitchenaid.com/content/dam/global/documents/202003/warranty-w11436248-revb.pdf; https://www.maytag.com/content/dam/global/documents/201912/warranty-w11349450-reva.pdf; https://www.jennair.com/content/dam/global/documents/201503/warranty-W10665640-W.pdf (Last Accessed September 9, 2020).
[8] https://i.sears.com/s/d/pdf/mp-tc/10130653/prod_20510932512 (Last Accessed September 9, 2020).

after the Dishwashers began to leak due to the defect, the leakage under the dishwasher is not noticeable until damage to the surrounding floors and cabinetry has already occurred.

17.     Whirlpool knew or should have known that the Class Dishwashers have a defectively designed and/or manufactured sump and diverter motor pump assembly that leads to failure of the Diverter Shaft Seal, and are not fit for their intended purpose of providing customers with a reliable method of cleaning dishes without resulting in water damage to cabinetry and flooring. Nevertheless, Whirlpool failed to disclose this defect to Plaintiff and Class Members at the time of purchase or thereafter and continued to manufacture the Dishwashers in the same defective manner.

18.     Had Plaintiff and Class Members known about the defect at the time of purchase, as well as the associated costs related to repair or replace the Dishwasher, Plaintiff and the Class Members would not have purchased the Dishwashers or would have paid less for them. Plaintiff and Class Members also would not have agreed to the one-year warranty.

## PARTIES

19.     Plaintiff Christopher Redmon is an Illinois citizen who lives in Manteno, Kankakee County, Illinois.

20.     Defendant Whirlpool Corporation is incorporated in Delaware, with its principal place of business located in Michigan.

21.     Whirlpool and its affiliated brands distribute, market, and direct the marketing of its Dishwashers in Illinois, and throughout the United States.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because: (1) there are one hundred or more

(named and unnamed) class members, (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (3) there is minimal diversity because Plaintiff and Defendant are citizens of different States. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

23.     This Court may exercise personal jurisdiction over Defendant because Defendant does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sale of products in this District, and has engaged in the unlawful practices described in this Complaint within this District.

24.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff's dishwasher was purchased and installed in this District, and damages stemming therefrom also occurred in this District.

## COMMON FACTUAL ALLEGATIONS

25.     In 1886, Josephine Garis Cochran invented and patented the first useful dishwasher for homes. Following its debut at the World's Fair in 1893, only restaurants and hotels were interested in purchasing Ms. Cochran's dishwasher so Ms. Cochran started her own business to manufacture the machines. That business went on to become KitchenAid.[9]

26.     Just a few short years later, in 1911, members of the Upton family who were given the patent on a manually operated clothes washers founded the company preceding Whirlpool. Over the next several decades, the company expanded its appliance line and in 1950 it renamed itself Whirlpool Corporation.[10]

---

[9] https://www.uspto.gov/about-us/news-updates/woman-invented-dishwasher (Last Accessed September 18, 2020).
[10] https://www.referenceforbusiness.com/history2/19/Whirlpool-Corporation.html (Last Accessed September 18, 2020).

27.     In 1986, Whirlpool acquired KitchenAid, and by 2006 it had acquired Maytag and JennAir.[11]   Whirlpool and its brands have sold more than $20 billion in household appliances, including dishwashers, each year since 2014.[12]

28.     While KitchenAid, Maytag, JennAir, and Kenmore maintain their own brand names for the purpose of sales, Whirlpool designed and manufactured the Class Dishwashers at issue in this action.

29.     At all times relevant herein, KitchenAid, Maytag, and JennAir marketed the Class Dishwashers as a Whirlpool product, including acknowledging this fact in the dishwasher warranties.

30.     The Dishwashers are used, and intended by Whirlpool to be used, for reliable and convenient dishwashing.

31.     Each Dishwasher is designed and manufactured to distribute dish detergent along with clean, hot water consistently throughout the dishwasher during the cleaning process.  This process is accomplished utilizing various mechanical parts, including motors, rotating spray arms, and the sump assembly.

32.     The diverter motor pump and sump assembly are located almost entirely below the dishwasher tub and are responsible for collecting clean water.  The sump is attached to the diverter shaft and diverter pump motor.  Once the temperature of the water has been sufficiently raised, the water is pumped by the motor into the spray arms and dispersed throughout the dishwasher by the rotating diverter shaft.

---

[11]  https://www.whirlpoolcorp.com/2010annual/brand-kitchenaid.html (Last Accessed September 18, 2020).
[12]  https://www.statista.com/statistics/220658/revenues-of-whirlpool-since-2007/ (Last Accessed September 18, 2020).

33. The Diverter Shaft Seal is a polymer, elastomeric ring that seals the sump housing from the diverter assembly and prevents leaking between the diverter shaft and sump. It is intended to be designed with the sump assembly and installed in such a manner that creates a leak proof seal. As the dishwasher begins to run and water is pumped into the spray arms, a spring between the diverter shaft squeezes into the Diverter Shaft Seal and creates a watertight seal.

34. However, the Diverter Shaft Seal in the Dishwashers are installed in an inverted orientation, such that the lips of the seal are unable to tightly fit against the diverter shaft and sump and prevent leakage. As a result, the Diverter Shaft Seal fails as a result of the inverted orientation between the diverter pump motor and sump assembly.

35. This failure to properly orient the Diverter Shaft Seal exposes a larger portion of the Diverter Shaft Seal to hot, soapy water and debris from dirty dishes. As the dishwasher is put into use, the exposure to the hot soapy water accelerates degradation of the Diverter Shaft Seal's polymer materials. Further, the failure to accomplish a complete seal allows for debris to collect, preventing the spring to completely close and seal off the sump assembly.

36. Upon information and belief, this inverted orientation is a direct violation of the Divert Shaft Seal's manufacturer's installation instructions.

37. This accelerated Diverter Shaft Seal failure results in leakage through the Dishwasher unit itself, into cabinetry and onto floors. The leakage often begins so slowly that Plaintiff and Class Members do not know until a complete failure has occurred.

38. The Defect is latent such that no reasonable customer would know, or be able to discover through inspection, that it exists between the diverter motor pump and sump assembly

at the time the Dishwasher is purchased. However, Whirlpool knew or should have known of the defect before it distributed the Dishwashers into the consumer marketplace.

39.     Plaintiff and the Class Members have a reasonable expectation that their Dishwashers will have at least ten years of useful service life.[13]   However, due to the latent defect, the Dishwashers fail before ten years and many times within the first four years of the service life.

40.     When customers first began to complain to Whirlpool about the Diverter Shaft Seal failures, Whirlpool routinely denied the claim and offered to sell a replacement Diverter Shaft Seal to the customer for less than $10.  However, as claims continued to come in, rather than cover the cost of repairs to the Dishwashers, Whirlpool discontinued the sale of the individual Diverter Shaft Seal and now requires consumers to purchase the full sump assembly with the Diverter Shaft Seal attached.   This part, without the cost of installation, is approximately $60-$75.  Through the use of an experienced technician, the cost of repair is approximately $200.00 or more, which is more than 1/3 of the cost of the original Dishwasher. Upon information and belief, the sump assembly replacement part also has an inverted Diverter Shaft Seal, rendering the replacement part defective.

41.     Whirlpool at all times failed to disclose its knowledge of the defect to customers during the warranty claims process.

42.     However, as this Defect is so well known, many appliance repair companies do not want to risk replacing the sump assembly due to fear that the Diverter Shaft Seal is still installed upside down and will fail again, leaving consumers with a defective dishwasher.

---

[13]   *See also*,   https://www.consumerreports.org/dishwashers/how-to-make-your-dishwasher-last-longer/   (Last Accessed September 18, 2020).

43.     Whirlpool expressly and impliedly warrants, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Dishwashers are fit for the ordinary purpose for which they are sold.

44.     Whirlpool expressly warrants in its Owner Manuals and User Instructions that the Dishwashers are free from defects for one year.

45.     Whirlpool's manifest intent that its warranties apply to Plaintiff and consumer Class Members as third-party beneficiaries is evident from the statements contained in its product literature, including its Major Appliance Limited Warranty ("the Warranty"), which begins the date of the consumer's purchase and excludes commercial, non-residential use. Exhibit A.  Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members would be the intended beneficiary of the products and warranties.

46.     Specifically, Whirlpool's one-year Warranty provides as follows:

For one year from the date of purchase, when this major appliance is installed, operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation or Whirlpool Canada LP (hereafter "Whirlpool") will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product. In the event of product replacement, your appliance will be warranted for the remaining term of the original unit's warranty period.  Exhibit A.

47.     Likewise, KitchenAid's one-year warranty issued by Whirlpool provides:

The Beneficiary/Holder of the warranty contained in this Certificate of Warranty is entitled to demand Warrantor who in turn agrees to provide the Beneficiary/Holder, free of charge, with the qualified labor and spare parts required to repair and have the warranted product in good operational conditions - the model and serial number of which are indicated in section 5 hereof and/or in the product label and/or in the User Manual included with the product this Certificate is an integral part of - any time the product requires intervention due to inconveniences or operating failure of the product or any part thereof and whenever the product fails under normal use conditions.

The term of the warranty granted hereby shall be one (1) year commencing on the date final consumer originally purchased the warranted product. During such periods, Warrantor shall ensure free repair of the product in the terms indicated above.[14]

48.    The Warranty fails of its essential purpose for the following reasons:

    a.   Whirlpool fails to disclose its knowledge of the defect when contacted by customers about Dishwasher failures;

    b.   Whirlpool provides identically defective sump assemblies with inverted Diverter Shaft Seals; and

    c.   Refuses to replace the Dishwashers when it knows the repairs will not remedy the problem.

49.    As described herein, Whirlpool breached this warranty at the time Plaintiff and Class Members purchased the Dishwashers because, the Dishwashers were defective when they came off of the assembly line. Thus, at the time the defective Dishwashers sold to consumers, Whirlpool was already in violation of the express warranty.

50.    Further, because Whirlpool does not have non-defective sump assemblies with properly oriented Diverter Shaft Seals available to replace the defective assembly, and because its repairs are simply a band-aid that do not resolve the defect, it is unable to fulfill its warranty obligations at the point of purchase, or anytime thereafter, and the warranty is therefore breached immediately upon purchase.

51.    In addition, the Warranty has several terms that are unconscionable as follows:

    a.   In the one-year time limitation when the latent defect regularly does not manifest until after the expiration of the limitation;

    b.   In the failure and refusal to extend the time limitation at the time a replacement is installed;

    c.   In its prohibition against application in multi-family residences;

---

[14]    https://www.kitchenaid.com/content/dam/global/documents/202003/warranty-w11436248-revb.pdf   (Last Accessed September 9, 2020).

d.  In its exclusion of repairs to parts or systems to correct product damage or defects caused by unauthorized service, alteration or modification of the appliance;

e.  In its exclusion of travel or transportation expenses for service in remote locations where an authorized Whirlpool servicer is not available;

f.  In its disclaimer of warranties; and

g.  In its limitation of remedies, including disclaimer of consequential damages.

52.     The Warranty is further unconscionable given Whirlpool's knowledge of the Defect, the existence of the Defect at the point of sale, Whirlpool's failure to disclose the Defect at the time of sale and during warranty communications, and in the premature failure of the Dishwashers.

53.     The Defect renders the Dishwashers unfit for the ordinary purpose for which they are used, which is to reliably clean dishes.

54.     Had Plaintiff, Class Members, and the consuming public known that the Dishwashers were defective and would cause damage to other property, they would not have purchased the Dishwashers at all, or would not have paid the price they did.

55.     In sum, Whirlpool has actively concealed the existence and nature of the defect from Plaintiff and Class Members, despite its knowledge of the existence and pervasiveness of the defect, and certainly well before Plaintiff and Class members purchased the Dishwashers and during warranty communications.  Specifically, Whirlpool has:

a.      Failed to disclose the defect to consumers, at or after the time of purchase, including when consumers make warranty claims or otherwise complain to Whirlpool or its affiliates about the defect;

b.      Actively concealed the defect from consumers, at or after the time of purchase, including when consumers make warranty claims or otherwise complain to Whirlpool about the defect;

c.      Failed to disclose, and actively concealed the defect from consumers, including that the Dishwashers were not fit for their intended purpose;

d.      Failed to disclose and actively concealed the defect from consumers when it improperly and unlawfully denied valid warranty claims; and

e.      Failed to disclose and actively concealed the defect from consumers when it provided them with replacement Diverter Shaft Seals and related sump assemblies that contain the same or similar defect.

56.      As a direct, proximate, and foreseeable result of the defect, Plaintiff and Class Members suffered damages, including but not limited to: (a) the difference in value of the Dishwashers as purchased and the Dishwashers received; (b) loss of use of the Dishwashers; (c) property damage; and (d) consequential damage.

## PLAINTIFF'S EXPERIENCE

57.      In or about the spring or summer of 2017, Mr. Redmon began shopping for a new, reliable dishwasher that would be long lasting and not require many repairs. After Mr. Redmon had disappointing prior experience with a dishwasher manufactured outside of the United States, he actively researched and sought out dishwashers made in the United States that he believed were of higher quality. When he viewed models at the store and spoke with the salesperson, he was told that the KitchenAid dishwashers were top of the line and made domestically. Relying on the statements of the salesperson that the KitchenAid was made in the

United States, was top of the line, and believing that to mean there would be fewer repairs than other comparable models, Mr. Redmon selected a KitchenAid Model KDTE254ESS2.

58.     In addition to the salesperson's representations, Mr. Redmon further relied on Whirlpool's representations in its written materials related to KitchenAid branded Dishwashers' quality and reliability regarding the Dishwashers.  He expected the dishwasher would last at least fifteen years and would not prematurely fail and cause damage to his home.

59.     Mr. Redmon purchased his Dishwasher from Frank's Appliances for $799.00. Mr. Redmon paid this amount for his Dishwasher because he believed it to be a high-end dishwasher compared to other brands and models. Mr. Redmon purchased his Dishwasher for normal, household (non-commercial) use, and it has in fact at all times only been used for normal household purposes.

60.     The Dishwasher was installed in his home shortly after his purchase.  Once the Dishwasher was installed in Mr. Redmon's kitchen, he began to regularly use it. From the time of purchase until the incident described below, Mr. Redmon used the Dishwasher as intended, and maintained it in a reasonable manner as an owner of an appliance.

61.     In June of 2020, the water inlet valve began to leak during normal use, causing water to run across the floor and pool under the kitchen island.  When Mr. Redmon inspected the Dishwasher, he discovered that the water had soaked the insulation, caused rust and corrosion underneath the Dishwasher, and discolored the grout of the ceramic flooring below. Mr. Redmon replaced the sump housing, shaft seal, and diverter motor out of his pocket. However, as the replacement parts require assembly in the same defective manner, the replacement will likewise fail.

62.     After learning that his Dishwasher suffered from a defect, which Whirlpool knew or should have known, but which was unknown to Mr. Redmon at the time he purchased the Dishwasher, Mr. Redmon performed research online and discovered numerous other consumers reporting the same or similar incidences of leakage.

63.     In early October of 2020, Mr. Redmon contacted Whirlpool and put them on notice of the problems he experienced with his Dishwasher.   At that time, the Whirlpool representative denied the warranty claim as the warranty had expired.   The Whirlpool representative failed to acknowledge that the Defect existed, or that Whirlpool knew about the Defect.

64.     Because Whirlpool unlawfully concealed the Defect from Mr. Redmon before his purchase, as well as after the Dishwasher was installed in his home, he did not suspect (and had no reason to suspect) that there was anything wrong with the Dishwasher until the Defect manifested.

65.     Mr. Redmon's Dishwasher has not operated properly for its life expectancy. Had he known of the Defect, he would have either not purchased the Dishwasher or would have paid less than he did. Therefore, he did not receive the benefit of his bargain.

## WHIRLPOOL'S ACTUAL OR
## CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

66.     Whirlpool knew or should have known when it sold the Dishwashers to the public that the Dishwashers suffered from the Defect, and that the defect caused the Dishwashers to function improperly during their expected useful life, fail prematurely, and might result in significant property damage to consumers and the public.

67.     Whirlpool's knowledge of these facts is established through consumer complaints, including several years of public Internet posts on consumer websites, complaining that the Dishwashers failed during normal use. Despite its knowledge, Whirlpool did not remedy or eliminate the defect in the Dishwashers or remove them from the stream of commerce.

68.     Instead, Whirlpool replaced the defective Dishwashers with equally defective Dishwashers, provided replacement Diverter Shaft Seals, which could not have been properly installed, provided defective sump assemblies with the same inverted Diverter Shaft Seal, which did not remedy the Defect, and/or improperly denied warranty claims.

69.     Years of customer complaints are also available online regarding the Dishwashers. For example, consumers noted:

From Rmsmith on AppliancePartsPros.com approximately 8 years ago (Kenmore 665.13922K010):[15]

> I have a rather newish Kenmore Elite 665.13922K010. It has been leaking from the diverter motor, W10056349, which has been replaced by W10155344. The problem is the seal that the diverter motor rests against, which basically a 3/4" rubber washer with a spring behind it. I just ordered a replacement diverter motor, but I can't see that the seal is included; the exploded diagram didn't have a complete breakout.

From Manage my Life on September 23, 2013 on Shopyourway.com (Kenmore 665.13942K010):[16]

> Kenmore Elite Dishwasher model 665.13942K010. Sears repairman replaced Diverter Valve Motor W10056349 on 5/21/12 due to water leaking through it. Today (9/23/13) same leak is occurring again (this time resulting in water damage to surrounding area). Unfortunately, this time the leak also damaged one of the

---

[15] https://forum.appliancepartspros.com/posts/t469715-leaking-dishwasher-diverter-motor
[16] https://www.shopyourway.com/questions/1230353

electrical connectors (on harness) that connects to the Diverter. It appears that the following parts need to be replaced to resolve the leak.
1. Diverter Valve Motor
2. Sump with Seal (because I cannot locate a part number for the seal alone)
3. Wiring Harness (due to the one small harness connector being severely corroded)
Questions:
A. Is there a way to keep from having to replace these parts every year or so?
B. Can the connector for the harness be purchased alone so that I do not have to buy and replace the whole harness?
C. Can the seal in the Sump be purchased so that I do not have to purchase and replace the whole sump?
Thanks for any assistance you can provide.

From Frances Starkey on ClassActionRebates.com on February 26, 2016:[17]

The first time I used the Kitchen-Aid dishwasher, I flooded my kitchen which in my brand new house.
I called Sears to report this and then sent a repairman out and he had to replace the [sic] pump/motor assembly.

From Arpanshah on AppliancePartsPros.com approximately 4 years ago:[18]

My Whirlpool Dishwasher was leaking from the bottom center and I had a technician who diagnosed and said that the Diverter Motor, part number W10537869, needs to be replaced. He just opened the bottom cover, ran the dishwasher cycle and saw water leaking but didn't remove any of the parts to confirm.

I looked at the forum here, ordered and fixed that part and the dishwasher is still leaking in the same place near the diverter motor. What did I miss? It seems the old diverter motor part is still good.

Is it he grommet? Do i need to replace the Sump (W10455268) assembly? Is that something I can do myself? Any help is appreciated. I searched the forums and some talked about replacing sump and some talked about just applying the seal/grommet.

From tdietz on AppliancePartsPros.com approximately 3 years ago (Kenmore 665.12762K310):[19]

---

[17] https://www.classactionrebates.com/settlements/whirlpool/
[18] https://forum.appliancepartspros.com/posts/t565085-whirlpool-leaking

My dishwasher was leaking right around the diverter motor. I replaced the diverter motor thinking that was the problem but when I got in there, I saw the rubber grommet and I figured that was the problem. I went ahead and replaced the motor but the leak continued. The manufacturer discontinued selling the $5 grommet because they are evil :-) and instead only sold the entire sump which was a pain to replace and $50 to boot.

Before I went that route, I removed the diverter motor and then treated the grommet with Permatex spray sealant from inside of the dishwasher. I put 5 coats which took about 10 minutes as you only wait about a minute between coat. After about 30 minutes, I also turned the dishwasher over and sprayed the sealant from the bottom a couple of coats as well. Then let it sit overnight. I reinstalled the diverter motor and ran the dishwasher through a couple of cycle the next day and not a leak in sight. Not sure how long this fix will hold but think it's a worth a shot. This stuff has worked good on a oil leak underneath an old car I had so I assume it will last some time.

Worse case scenario, you end up replacing the entire sump anyways so this is at least worth a shot before going that route. Certainly won't hurt anything other than the sump you'll already be replacing and is leaking anyways. Good luck!

From J_H on AppliancePartsPros.com approximately 2 years ago (Kenmore 665.12762K310):[20]

From the dates on these posts, I guess I am one of the lucky ones who didn't have his Kenmore 665.12762K310 start leaking until it was nearly 5 years old. However, I am one of the unlucky ones who got the version with the grommet permanently affixed to the sump. Replaced the sump, replaced the diverter motor. Still leaks, and it's not just a trickle. What an abomination of design this thing is.

Undecided about how to proceed. I have read the various posts - there is no easy way to create positive pressure to seal the grommet/shaft interface. I'm going to try to find a tight neoprene gasket & silicone and hope for the best.

From Orchid Borealis Blogspot on March 11, 2017 (Kenmore 665.12793K311):[21]

After 1 year of the major repair, it developed another problem in fall/winter 2016. This time, the diverter motor started to leak. From googling around, this is another common problem with this model. The lower spray arm of this dishwasher is not passively moving like most of the dishwasher; a motor controls the movement of the spray arm (see the next photo). I'm guessing the leaking

---

[19] https://forum.appliancepartspros.com/posts/t573018-whirlpool-diverter-motor-grommet-leak-fix

[20] https://forum.appliancepartspros.com/posts/t469715findlastpost-leaking-dishwasher-diverter-motor

[21] http://orchidborealis.blogspot.com/2017/03/kenmore-dishwasher-leaking-diverter.html

problem is coming from this more complicated mechanisms. In this post, I'm going to illustrate how to repair this problem.

70.     In conjunction with Whirlpool's vast experience with kitchen appliances, including designing and selling the Dishwashers, these facts and complaints illustrate that Whirlpool knew or should have known of the defect.

71.     Whirlpool has a duty to disclose the defect and to not conceal the defect from Plaintiff and Class Members. Whirlpool's failure to disclose, or active concealment of, the defect places Plaintiff and Class members at risk of property damage.

72.     Upon information and belief, Whirlpool is currently still selling the defective Dishwashers, concealing the defect, failing to notify consumers of the defect, and failing to recall the Dishwashers.

73.     Moreover, Whirlpool continues to falsely represent through written warranties and manuals that the Dishwashers are free from defect, are of merchantable quality, and will perform dependably for years.

74.     When corresponding with customers, Whirlpool does not disclose that the Dishwashers suffer from the Defect. As a result, reasonable consumers, including Plaintiff and Class Members, purchased and used, and continue to purchase and use the Dishwashers in their homes even though they will prematurely fail and cause damage to other property.

75.     When Whirlpool replaces units, it fails to disclose the known defect and it replaces the defective Dishwashers with equally defective Dishwashers, or just replaces the parts with the same defective assemblies, which does not remedy the Defect.

76. Had Plaintiff, Class Members, and the consuming public known that the Dishwashers were defective, would prematurely fail and cause damage to their property, and they would not have purchased the Dishwashers.

77. Whirlpool has wrongfully placed on Plaintiff and Class Members the burden, expense, and difficulty involved in discovering the defect, repairing and replacing the Dishwashers (potentially multiple times), and paying for the cost of damages caused by the Defect.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

78. Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence that their Dishwashers were defective within the time-period of any applicable statutes of limitation.

79. Among other things, neither Plaintiff nor the other Class Members knew or could have known that the Dishwashers contain the defect, which causes leakage and damage to other property.

80. Further, Plaintiff and Class Members had no knowledge of the defect and it occurred in a part of the Dishwashers that is not visible to consumers. Whirlpool attempted to conceal its knowledge of the Defect or otherwise capitalize on it further by selling defective replacement parts. Accordingly, any applicable statute of limitation is tolled.

**B.** **Fraudulent Concealment Tolling**

81.     Throughout the time period relevant to this action, Whirlpool concealed from and failed to disclose to Plaintiff and the other Class Members vital information about the Defect described herein.

82.     Whirlpool kept Plaintiff and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the Defect, even upon reasonable exercise of diligence.

83.     Throughout the Class Period, Whirlpool has been aware that the pump assembly it designed, manufactured, and installed in the Dishwashers contained the Defect, resulting in premature and accelerated degradation of the Diverter Shaft Seal and eventual leakage.

84.     Despite its knowledge of the defect, Whirlpool failed to disclose and concealed, and continues to conceal, this critical information from Plaintiff and the other Class Members, even though, at any point in time, it could have disclosed the defect through recall, individual correspondence, media release, or by other means.

85.     Additionally, Whirlpool failed to disclose and concealed the Defect from Plaintiff and Class Members during warranty calls.

86.     Plaintiff and the other Class Members justifiably relied on Whirlpool to disclose the Defect in the Dishwashers that they purchased, because the defect was hidden and not discoverable through reasonable efforts by Plaintiff and the other Class Members.

87.     Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiff and the other Class Members have sustained as a result of the defect, by virtue of the fraudulent concealment doctrine.

**C.      Estoppel**

88.      Whirlpool was under a continuous duty to disclose to Plaintiff and the other Class Members the true character, quality, and nature of the defective Dishwashers.

89.      Whirlpool knowingly concealed the true nature, quality, and character of the defective Dishwashers from consumers.

90.      Based on the foregoing, Whirlpool is estopped from relying on any statutes of limitations in defense of this action.

<u>**CLASS ACTION ALLEGATIONS**</u>

91.      Plaintiff brings this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

92.      The Class is defined as:

**During the fullest period allowed by law, all persons in the State of Illinois who own or owned a  Whirlpool manufactured dishwasher with an inverted diverter shaft seal.**

93.      Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, and their immediate families.

94.      Plaintiff reserves the right to amend or modify the Class definition after he has had an opportunity to conduct discovery.

95.      Numerosity:  Fed. R. Civ. P. 23(a)(1). The Class is so numerous that the joinder of all members is unfeasible and not practicable. While the precise number of Class Members

has not been determined at this time, Plaintiff is informed and believes that thousands of consumers have purchased the Class Dishwashers in Illinois.

96. Commonality: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

      a.    whether the Class Dishwashers are defectively designed or manufactured;

      b.    whether the fact that the Class Dishwashers suffer from the defect would be considered material to a reasonable consumer;

      c.    whether, as a result of Whirlpool's concealment or failure to disclose material facts, Plaintiff and Class Members acted to their detriment by purchasing Class Dishwashers manufactured by Whirlpool;

      d.    whether Whirlpool was aware of the defect;

      f.    whether Whirlpool breached express warranties with respect to the Class Dishwashers;

      g.    whether Whirlpool has a duty to disclose the defective nature of the Class Dishwashers to Plaintiff and Class Members;

      h.    whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

      i.    in other ways to be supplemented as a result of discovery.

97. Adequate Representation: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

98.     Predominance and Superiority: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Whirlpool's unlawful and wrongful conduct.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.   Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.   Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Whirlpool's misconduct.   Absent a class action, Class Members will continue to incur damages, and Whirlpool's misconduct will continue without remedy.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

### FIRST CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### (810 ILCS 5/2-313)
### (Plaintiff Individually and on Behalf of the Class)

99.     Plaintiff hereby adopts and incorporates by reference, all foregoing allegations as though fully set forth herein.

100.     In connection with its sale of the Dishwashers, Whirlpool expressly warranted that they were free from defect at the time of purchase, and suitable for reliable dishwashing.

101.     The defectively designed Dishwashers are subject to and otherwise covered by Whirlpool's Major Appliance Limited Warranty, which applies to each Dishwasher.

102.     At all times referenced herein, Whirlpool was the "seller" of the Dishwashers.

103. At all times referenced herein, the Dishwashers were "goods" as defined 810 ILCS 5/2-313.

104. Whirlpool's representations in its Warranty and regarding the reliability and durability of the Dishwashers, among other representations, each constitute an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313.

105. These descriptions and representations were made part of the basis of the bargain and created an express warranty that the goods shall conform to the description.

106. Each of the Dishwashers likewise has an identical or substantially identical Warranty.

107. Whirlpool was obligated, under the terms of the express warranty to adequately repair or replace the defective Dishwashers for Plaintiff and Class Members.

108. Privity is not required because Plaintiff and each of the members of the Class are the intended beneficiaries of Whirlpool's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Dishwashers and have no rights under the warranty agreements provided by Whirlpool. Whirlpool's warranties were designed for and intended to benefit the consumer only and Plaintiff and Class Members were the intended beneficiaries of the Dishwashers.

109. More specifically, Whirlpool's manifest intent that its warranties apply to Plaintiff and consumer Class Members as third-party beneficiaries, is evident from the statements contained in its product literature, including its Warranty, which specifically states the Dishwashers are to be used for non-commercial, household use. Likewise, it was reasonably

27

foreseeable that Plaintiff and consumer Class Members would be the intended beneficiary of the products and warranties.

110.    In its Warranty, Whirlpool warrants that the Dishwashers would be free of defects for one year from the date of purchase.  Exhibit A.

111.    Whirlpool's warranty representations are made online, on its packaging, through its various manuals, and its Warranty.

112.    Whirlpool breached the warranty because it improperly and unlawfully denies valid warranty claims, and it has failed or refused to adequately repair or replace the Dishwashers with non-defective units or parts. Plaintiff and the Class Members have privity of contract with Whirlpool through their purchase of the Dishwashers, and through the express written and implied warranties that Whirlpool issued to its customers. Whirlpool's warranties accompanied the Dishwashers and were intended to benefit end-users of the Dishwashers.

113.    To the extent Class Members purchased the Dishwashers from third-party retailers or via the purchase of their homes, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Whirlpool and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer; in other words, the contracts are intended to benefit the ultimate consumer or user of the Dishwashers.

114.    The express written warranties covering the Dishwashers were a material part of the bargain between Whirlpool and consumers. At the time it made these express warranties, Whirlpool knew of the purpose for which Dishwashers were to be used.

115.    Whirlpool breached its express warranties by selling Dishwashers that were, in actuality, not free of defect, would inevitably fail prematurely, were not made from

merchantable material and workmanship, and could not be used for the ordinary purpose of reliably cleaning dishwashes.  Whirlpool breached its express written warranties to Plaintiff and Class Members in that the Dishwashers are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a risk of damage to Plaintiff and Class Members.

116.     The Dishwashers that the Plaintiff and Class Members purchased contained a Defect that caused each of them damages including water damage to cabinetry and flooring, loss of the product, loss of the benefit of their bargain, and other property damage.

117.     The limitations and the exclusions in Whirlpool's Warranty are harsh, oppressive, one-sided, unconscionable and unenforceable, as described *supra*, particularly in light of the fact that Whirlpool knew that the Dishwashers suffered from the Defect described herein.

118.     Any attempt by Whirlpool to limit or disclaim the express warranty in a manner that would exclude coverage of the defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by Whirlpool's concealment of material facts.  Thus, any such effort to disclaim, or otherwise limit, its liability for the defect is null and void.

119.     Moreover, Whirlpool was put on constructive notice about its breach through its review of consumer complaints dating back at least eight years ago, as well as through appliance sale and repair entities, and, upon information and belief, through product testing.

120.     In October of 2020, Plaintiff put Whirlpool on notice of the Defect prior to the filing of this lawsuit and the request for replacement was denied.  As the replacement assembly for repair of the Defect also contains the Defect, any offer to replace is insufficient.

121.    Despite having notice and knowledge of the defective nature of the Dishwashers, Whirlpool failed to provide any relief to Class Members with Dishwashers more than one (1) year old, failed to provide a non-defective replacement Dishwasher to Plaintiff and Class Members, and otherwise failed to offer any appropriate repair or compensation from the resulting damages.

122.    Whirlpool breached its express warranty to adequately repair or replace the Dishwashers despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Dishwashers.

123.    To the extent that Whirlpool offered to replace the defective Dishwashers, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiff and Class Members whole because the warranty covering the Dishwashers gives Whirlpool the option to repair or replace the Dishwasher, where neither is sufficient. Specifically, in its course of business, Whirlpool often has opted to provide a replacement Dishwashers to complaining consumers; however, the replacement Dishwasher likewise contains the Defect, resulting in the same or similar damages.

124.    Further, where Whirlpool has *sold* or otherwise provided replacement sump assemblies, those assemblies are likewise defective and have failed or will fail in the same manner.

125.    Many of the damages resulting from the defective Dishwashers cannot be resolved through the limited remedy of replacement, as incidental and consequential damages from water damage to cabinetry and flooring that Plaintiff and Class Members have already been suffered due to Whirlpool's conduct as alleged herein.

126.   Accordingly, recovery by Plaintiff and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

127.   Had Plaintiff, Class Members, and the consuming public known that the Dishwashers were defective, would cause damage, or that Whirlpool would not properly honor its warranty, they would not have purchased the Dishwashers or would have paid less for them.

128.   To the extent any express warranties do not by their terms cover the defect alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiff and Class Members whole, the warranty fails of its essential purpose and, accordingly, recovery by Plaintiff and Class Members are not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

129.   Plaintiff and Class Members have performed all duties required of them under the terms of the express warranty, except as may have been excused or prevented through the conduct of Whirlpool or by operation of law in light of Whirlpool's conduct described throughout this Complaint.

130.   Whirlpool has received timely notice regarding the problems at issue in this litigation, and notwithstanding, Whirlpool has failed and refused to offer an effective remedy.

131.   As a direct and proximate result of Whirlpool's breach of its express written warranties, Plaintiff and Class Members have suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to the cost of inspection, repair, damage to other property, and diminution in value.  Plaintiff and Class members suffered damages at the point of sale stemming from their overpayment for the defective Dishwashers, in addition to water damage to other property, and loss of the product and its intended benefits.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
## (810 ILCS 5/2-315)
## (Plaintiff Individually and on Behalf of the Class)

132.    Plaintiff hereby adopts and incorporates by reference, all foregoing allegations as though fully set forth herein.

133.    Whirlpool is and was at all relevant times a merchant with respect to the Class Dishwashers, under 810 ILCS 5/2-315.

134.    The Class Dishwashers are and were at all relevant times "good" within the meaning of 810 ILCS 5/2-315.

135.    Whirlpool was at all relevant times involved in the manufacturing, and is the distributor, warrantor, and/or seller of the Dishwashers.

136.    Whirlpool knew or had reason to know of the specific use for which the Dishwashers, as goods, were purchased.

137.    Whirlpool entered into agreements with retailers, suppliers, and/or contractors to sell its Dishwashers to be installed at Plaintiff's and Class Members' homes.

138.    Whirlpool provided Plaintiff and Class Members with implied warranties that the Dishwashers were merchantable and fit for the ordinary purposes for which they were used and sold and were not otherwise injurious to consumers and their property.

139.    However, the Dishwashers are not fit for their ordinary purpose of providing reasonably reliable method of washing dishes because, *inter alia*, the Dishwashers contain a defect preventing the Dishwashers from reliably washing dishes and causing leakage outside of the unit and damaging cabinetry and flooring.  Therefore, the Dishwashers are not fit for their particular purpose of reliably washing dishes.

140.    Plaintiff and Class Members have had sufficient direct dealings with either Whirlpool or one of its agents to establish privity of contract between Whirlpool, on the one hand, and Plaintiff and each Class Member, on the other hand.

141.    Privity is not required because Plaintiff and each of the Class Members are the intended beneficiaries of Whirlpool's warranties and its sale through retailers.  The retailers were not intended to be the ultimate consumers of the Dishwashers and have no rights under the warranties provided by Whirlpool.  Whirlpool's warranties were designed for and intended to benefit the consumer only and Plaintiff and Class Members were the intended beneficiaries of the Dishwashers.

142.    More specifically, Whirlpool's manifest intent that its warranties apply to Plaintiff and consumer Class Members as third-party beneficiaries, is evident from the statements contained in its product literature, including its Warranty, which specifically states the Dishwashers are to be used for household, non-commercial use.  Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members would be the intended beneficiary of the products and warranties.

143.    Whirlpool impliedly warranted that the Dishwashers were of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that the Dishwashers manufactured, supplied, distributed, and/or sold by Whirlpool were safe and reliable for cleaning dishes; and (ii) a warranty that the Dishwashers would be fit for their intended use while the Dishwashers were being operated.

144.    Contrary to the applicable implied warranties, the Dishwashers, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff

and Class Members with reliable and durable methods of cleaning dishes. Instead, the Dishwashers suffer from a defective design and/or manufacture, as alleged herein.

145. Whirlpool's failure to adequately repair or replace the defective Dishwashers has caused the warranty to fail of its essential purpose.

146. Whirlpool breached the implied warranties because the Dishwashers were sold with the Defect, which substantially reduced and/or prevented the Dishwashers from being used for safe dish cleaning.

147. Plaintiff provided Whirlpool notice of its breach in October of 2020, prior to the filing of this Complaint.

148. Moreover, Whirlpool was put on constructive notice about its breach through its review of consumer complaints and other reports described herein, and, upon information and belief, through product testing.

149. Had Plaintiff, Class Members, and the consuming public known that the Dishwashers were defective or would cause damage, they would not have purchased the Dishwashers or would have paid less for them.

150. As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### THIRD CLAIM FOR RELIEF
### (IN THE ALTERNATIVE)
**Breach of Contract**
**(Plaintiff Individually and on Behalf of the Class)**

151. Plaintiff hereby adopts and incorporates by reference, all foregoing allegations as though fully set forth herein.

152. To the extent Whirlpool's commitment is deemed not to be a warranty under Illinois' Uniform Commercial Code, Plaintiff plead in the alternative under common law warranty and contract law.

153. Plaintiff and Class Members purchased the Dishwashers from Whirlpool or through authorized retailers and other appliance stores.

154. Whirlpool expressly warranted that the Dishwashers were fit for their intended purpose and that they were free of defect and suitable for cleaning dishes.

155. Whirlpool made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Whirlpool.

156. Whirlpool breached the warranties and/or contract obligations by placing the defective Dishwashers into the stream of commerce and selling them to consumers, when it knew the Dishwashers contained the Defect, were prone to premature failure, would not reliable clean dishes, and would cause water damage to cabinetry and flooring. These deficiencies substantially and/or completely impair the use and value of the Dishwashers.

157. The deficiencies described existed when the Dishwashers left Whirlpool's possession or control and were sold to Plaintiff and Class Members. The deficiencies and impairment of the use and value of the Dishwashers were not discoverable by Plaintiff or Class Members at the time of the purchase of the Dishwashers.

158. Had Plaintiff, Class Members, and the consuming public known that the Dishwashers were defective or would cause damage, they would not have purchased the Dishwashers or would have paid less for them.

159. As a direct and proximate cause of Whirlpool's breach of contract, Plaintiff and Class Members were harmed because they would not have purchased the Dishwashers if they knew the truth about the defective condition of the Dishwashers.

**FOURTH CLAIM FOR RELIEF**
**(IN THE ALTERNATIVE)**
**Unjust Enrichment**
**(Plaintiff Individually and on Behalf of the Class)**

160. Plaintiff hereby adopts and incorporates by reference, all foregoing allegations as though fully set forth herein.

161. This alternative claim is asserted on behalf of Plaintiff and Class Members to the extent there is any determination that any contracts between Class Members and Whirlpool do not govern the subject matter of the disputes with Whirlpool, or that Plaintiff does not have standing to assert any contractual claims against Whirlpool.

162. Plaintiff and Class Members conferred a monetary benefit on Whirlpool, and Whirlpool had knowledge of this benefit. The average price paid by Plaintiff and Class Members for the Dishwashers was more than $500.00.

163. By its wrongful acts and omissions described herein, including selling the defective Dishwashers, Whirlpool was unjustly enriched at the expense of Plaintiff and Class Members.

164. Plaintiff' and Class Members' detriment and Whirlpool's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

165. It would be inequitable for Whirlpool to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the defective Dishwashers.

166.     Plaintiff and Class Members seek restitution from Whirlpool and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Whirlpool from its wrongful conduct and establishing a constructive trust from which Plaintiff and Class Members may seek restitution.

**FIFTH CAUSE OF ACTION**
**ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT**
**("ICFA")**
**(815 ILCS 505/1, *et seq*.)**
**(Plaintiff individually, and on behalf of the Class)**

167.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

168.     Plaintiff brings this cause of action individually and on behalf of the Class.

169.     Plaintiff and other Class Members are persons within the context of the ICFA, 815 ILCS 505/1(c).

170.     Whirlpool is a person within the context of the ICFA, 815 ILCS 505/1(c).

171.     At all times relevant hereto, Whirlpool was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

172.     Plaintiff and the proposed Class are "consumers" who purchased the Class Dishwashers for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

173.     The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

174.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising,

misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

175.    Whirlpool's conduct, as described herein, took place within the State of Illinois and constitute unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, *et seq*.

176.    Whirlpool engaged in deceptive trade practices in violation of the ICFA by failing to disclose and actively concealing the risks posed by the defective Class Dishwashers and the eventual leaking that was known to occur.

177.    Whirlpool violated the ICFA and Section 2 of the UDTPA by representing that its Class Dishwashers have characteristics or benefits that they do not have and that the Class Dishwashers "are of a particular standard, quality or grade" when they are of another.  815 ILCS § 505/2; 815 ILCS § 510/2(7).

178.    Whirlpool advertised the Class Dishwashers with intent not to sell them as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

179.    Whirlpool engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

180.    Whirlpool has known of the defective Dishwashers since at least 2015, when it began receiving hundreds of complaints of failing Dishwashers.  However, Whirlpool continued to allow unsuspecting purchasers to buy the Class Dishwashers and allowed them to continue using the Dishwashers, knowing they would eventually leak and cause damage to flooring, cabinetry, and other property.

181. Whirlpool owed Plaintiff and Class Members a duty to disclose the true durability and reliability of the defective Class Dishwashers because Whirlpool: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff; and/or (c) made incomplete representations about the durability and reliability of the foregoing generally, while withholding material facts from Plaintiff and Class Members that contradicted these representations.

182. Whirlpool intended that Plaintiff and other Class Members would, in the course of their decision to expend monies in purchasing or repairing Class Dishwashers, reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the quality of the Class Dishwashers with respect to materials, workmanship, design and/or manufacture.

183. Whirlpool's failure to disclose and active concealment of the dangers and risks posed by the defective Class Dishwashers were material to Plaintiff and Class Members and any reasonable consumer would have considered those facts important in deciding whether to purchase a dishwasher. A dishwasher made by a reputable manufacturer of durable and reliable Dishwashers is worth more than an otherwise comparable dishwasher made by a disreputable manufacturer of defective dishwashers that conceals defects rather than promptly remedies them.

184. Whirlpool's misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and other Class Members to be deceived about the reliability and durability of the Class Dishwashers, and that such Class Dishwashers would be backed by both express and implied warranties that would in fact be honored by Whirlpool.

185.    Although Whirlpool and its agents were aware that the Class Dishwashers were defective at the time that Plaintiff and Class Members purchased their Class Dishwashers, Whirlpool refused to provide a fix for the Defect, free of charge, as to comply with the terms of its written warranty and prevent the damages described herein.

186.    Whirlpool further misrepresented to Plaintiff and Class Members that the leakage experienced from the Defect was an anomaly and/or not a reported problem.

187.    Plaintiff and Class Members reasonably relied on Whirlpool's misrepresentations and omissions and expected that the Class Dishwashers would not be defective and leak, such that it would render the Class Dishwashers unusable and not fit for their ordinary use. Further, Plaintiff and Class Members reasonably expected Whirlpool would honor its warranty obligations as represented to them at the time they purchased their Dishwashers.

188.    The conduct of Whirlpool offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused avoidable and substantial injury to Plaintiff and Class Members (who were unable to have reasonably avoided damages through no fault of their own) without any countervailing benefits to consumers.

189.    Plaintiff and Class Members have been damaged as a proximate result of Whirlpool's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing defective Class Dishwashers.

190.    As a direct and proximate result of Whirlpool's violations of the ICFA, as set forth above, Plaintiff and the Class Members have suffered ascertainable loss of monies and property, caused by Whirlpool's misrepresentations and failure to disclose material information and refusal to provide effective cost-free repairs pursuant to its warranty and the average useful life of a Dishwasher.

191.    Had they been aware of the Defect in the Class Dishwashers, Plaintiff and Class Members either would have paid less for their Dishwashers or would not have purchased them at all. Plaintiff and Class Members did not receive the benefit of their bargain as a result of Whirlpool's misconduct.

192.    Plaintiff and Class Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 815 ILCS 505/10a of the ICFA. Plaintiff and Class Members are also entitled to injunctive relief, seeking an order enjoining Whirlpool's unfair and/or deceptive acts or practices.

**SIXTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Plaintiff Individually and on Behalf of the Class)**

193.    Plaintiff hereby adopts and incorporates by reference, all foregoing allegations as though fully set forth herein.

194.    Whirlpool has a duty to exercise reasonable care in the design, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Dishwashers that Whirlpool places into the stream of commerce, including a duty to assure that the product will perform as intended and will not cause damage as described herein.

195.    Whirlpool breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Dishwashers that Whirlpool placed into the stream of commerce in that Whirlpool knew or should have known that the product was defective, did not function as intended, and/or created a high risk of unreasonable, dangerous, foreseeable consequences.

196.    The negligence of Whirlpool, their agents, servants, and/or employees, includes, but is not limited to, the following acts and/or omissions:

a.  designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Dishwashers without thoroughly testing it;

b.  negligently failing to adequately and correctly warn Plaintiff, Class Members, and the public, of the risks, potential damage, and dangers of premature failure of Whirlpool's Dishwashers;

c.  negligently failing to recall or otherwise notify users at the earliest date that it became known that the Dishwashers was, in fact, defective and would prematurely fail;

d.  negligently advertising and recommending the use of the Dishwashers without sufficient knowledge as to its manufacturing defect and premature failure;

e.  negligently representing that Whirlpool's Dishwashers were suitable for its intended purpose when, in fact, the Defect will render the Dishwasher unable to properly clean dishes and otherwise lead to water damage outside of the units themselves;

f.  negligently designing and processing the Dishwashers in a manner that would prematurely fail; and

g.  in other such ways that may be proven at trial.

197.    Whirlpool were negligent in the design, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Whirlpool's Dishwashers in that they:

a.  failed to use due care in designing and manufacturing the Dishwashers so as to avoid the premature failure when the Dishwashers was used for its intended

purpose;

b. designing and manufacturing the Dishwashers in a manner contradictory to the Diverter Shaft Seal's manufacturing instructions;

c. failing to conduct adequate testing to determine the useful life of the Dishwashers; and

d. failing to warn Plaintiff, prior to actively encouraging the purchase of the Dishwashers either directly or indirectly, orally or in writing, about the defective nature of the product; and

e. in other such ways that may be proven at trial.

198. Upon information and belief, despite the fact that Whirlpool knew or should have known that the Dishwashers was defective and would prematurely fail, Whirlpool continued to design, manufacture, process, distribute, deliver, supply, market and/or sell Dishwashers to Plaintiff, Class Members, and/or the consuming public.

199. Whirlpool knew or should have known that consumers such as Plaintiff and Class Members would foreseeably suffer damage to the Dishwashers and Plaintiff and Class Members' property as a result of Whirlpool's acts and omissions, as well as failure to exercise ordinary care, as well as Whirlpool's negligent design and manufacture of the Dishwashers, as set forth herein.

200. Whirlpool's negligence was the proximate cause of Plaintiff's and Class Members' damages to the product, water damage to cabinetry and flooring, as well as economic loss, which they suffered and will continue to suffer.

201. By reason of the foregoing, Plaintiff and Class Members experienced and/or are at risk of premature failure of the Dishwashers, and water damage to cabinetry and flooring.

202.    Had Plaintiff, Class Members, and the consuming public known that the Dishwashers were defective or would cause damage, they would not have purchased the Dishwashers or would have paid less for them.

203.    As a direct and proximate result of Whirlpool's misconduct, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Plaintiff Individually and on Behalf of the Class)**

204.    Plaintiff hereby adopts and incorporates by reference, all foregoing allegations as though fully set forth herein.

205.    Whirlpool knew or should have known that the Dishwashers were defective in design and manufacture, was not fit for its ordinary and intended use, and failed to perform in accordance with advertisements, marketing materials and warranties disseminated by Whirlpool, and with the reasonable expectations of ordinary consumers.

206.    Whirlpool fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that the Dishwashers is defective, would prematurely fail, and that the damages were not the result of mishandling or installation errors.

207.    Whirlpool had exclusive knowledge of the defective nature of the Dishwashers at the time of sale and at all other relevant times. The Defect is latent and not something that Plaintiff or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

208.    Whirlpool had the capacity to, and did, deceive Plaintiff and Class Members into believing that they were purchasing Dishwashers or homes with Dishwashers free from defects.

209.     Whirlpool undertook active and ongoing steps to conceal the Defect. Plaintiff is not aware of anything in Whirlpool's advertising, publicity, or marketing materials that disclosed the truth about the Defect, despite Whirlpool's awareness of the problem.

210.     The facts concealed and/or not disclosed by Whirlpool to Plaintiff and Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Dishwashers.

211.     Whirlpool intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiff and the Class to act thereon.

212.     Plaintiff and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Dishwashers.

213.     Plaintiff and Class Members suffered a loss of money in an amount to be proven at trial, *inter alia*, as a result of Whirlpool's fraudulent concealment and nondisclosure because: (a) they would not have purchased the Dishwashers on the same terms if the true facts concerning the defective Dishwashers had been known; (b) they would not have paid a price premium for the Dishwashers if they knew of the Defect and that the Dishwashers were likely to fail prematurely, leak, and cause water damage to cabinetry and flooring; and (c) the Dishwashers did not perform as promised.

214.     Had Plaintiff, Class Members, and the consuming public known that the Dishwashers were defective or would cause damage, they would not have purchased the Dishwashers or would have paid less for them.

215.     By reason of the foregoing, Plaintiff and Class Members suffered, and continue to suffer damage and injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

A.  Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.  Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Classes in an amount to be determined at trial;

C.  Grant restitution to Plaintiff and the Classes and require Whirlpool to disgorge its ill-gotten gains;

D.  Permanently enjoin Whirlpool from engaging in the wrongful and unlawful conduct alleged herein;

E.  Award Plaintiff and the Class Members their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

F.  Award Plaintiff and the Class Members pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G.  Award such further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  November 6, 2020                    Respectfully submitted,


                                            /s/ Edward A. Wallace
                                            Edward A. Wallace
                                            Tyler J. Story
                                            **WEXLER WALLACE, LLP**
                                            55 West Monroe Street, Suite 3300
                                            Chicago, Illinois 60603
                                            T: 312-346-2222
                                            eaw@wexlerwallace.com
                                            tjs@wexlerwallace.com

Gregory F. Coleman*
Rachel Soffin*
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
Arthur@gregcolemanlaw.com
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com


Harper T. Segui*
Daniel K. Bryson*
**WHITFIELD BRYSON, LLP**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
dan@whitfieldbryson.com
harper@whitfieldbryson.com
alex@whitfieldbryson.com


*Attorneys for Plaintiff and Putative Class*

* Motion to be admitted *pro hac vice* forthcoming.