# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER REDMON, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | No. 20 C 6626 |
| v. ) ) | Judge Ronald A. Guzmán |
| WHIRLPOOL CORPORATION, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant's motion to dismiss the Second Amended Class Action Complaint is granted in part and denied in part for the reasons explained below.

### BACKGROUND

This is a putative class action in which plaintiff, Christopher Redmon, sues Whirlpool Corporation ("Whirlpool") for various violations of state law arising from an alleged uniform defect in Whirlpool-manufactured dishwashers (including KitchenAid-, JennAir-, Maytag-, and Kenmore-branded dishwashers) that causes the dishwashers to leak and cause damage to surrounding kitchen cabinets and floors. Redmon claims that Whirlpool designed and manufactured its dishwashers' pump motor diverter shaft seal (the "diverter shaft seal"), which is part of the sump assembly, with the seal improperly "affixed in an inverted position, which exposes it to hot soapy water and debris. As the debris builds and the seal degrades, water begins to leak between the sump and the tub [of the dishwasher], eventually leaking through the entire unit[.]" (ECF No. 6, 2d Am. Compl. ¶ 10.) Redmon further alleges that Whirlpool knew about the defect prior to distributing the dishwashers; failed to remedy the defect; failed to inform consumers about the defect; and put the burden on consumers to repair the defect and pay for the cost of repairs to adjacent damaged personal property.

In the Second Amended Class Action Complaint (the "complaint"), plaintiff brings claims for (1) breach of express warranty; (2) breach of implied warranty; (3) breach of contract, pleaded in the alternative; (4) unjust enrichment, pleaded in the alternative; (5) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; (6) negligence; and (7) fraudulent concealment. Plaintiff's claims are asserted both individually and on behalf of a putative class of "all persons in the State of Illinois who own or owned a Whirlpool[-]manufactured dishwasher with an inverted diverter shaft seal," "[d]uring the fullest period allowed by law." (2d Am. Compl. ¶ 103.)

Whirlpool moves to dismiss plaintiff's Second Amended Class Action Complaint under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).

**DISCUSSION**

For purposes of a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts, and draws all reasonable inferences in the plaintiff's favor. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, a complaint must comply with Rule 8 by containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The amount of factual content required to state a plausible claim depends on the type of case. *Limestone Dev. Corp. v. Vill. of Lemont,* 520 F.3d 797, 803 (7th Cir. 2008).

The Court analyzes fraud claims under the heightened pleading standard of Rule 9(b). *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "That means that [plaintiff] must specifically allege the who, what, when, where, and how of the fraud." *Haywood*, 887 F.3d at 333 (internal punctuation and citation omitted). Rule 9(b)'s heightened standard does not, however, apply to state-of-mind allegations. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Instead, Rule 8's standards govern. *Iqbal*, 556 U.S. at 686-87.

The parties do not expressly address choice-of-law matters, but they both rely on Illinois law. Therefore, the Court will apply the substantive law of Illinois. *See Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000) (a court will not perform an independent choice-of-law analysis where the parties agree on the governing law and the choice bears a "reasonable relation" to their dispute).

**A.     Breach of Express and Implied Warranty (Counts I and II)**

In Count I, Redmon alleges that Whirlpool breached express warranties, including that its dishwashers would be free from defects at the time of purchase and from one year from the date of purchase and that they were suitable for reliable dishwashing. Redmon alleges that Whirlpool "improperly and unlawfully denies valid warranty claims" and "has failed or refused to adequately repair or replace the Dishwashers with non-defective units or parts." (2d Am. Compl. ¶ 123.) Redmon further alleges that the limitations and exclusions in Whirlpool's Major Appliance Written Warranty (the "Written Warranty"), attached as Exhibit A to the Second Amended Complaint, are unconscionable, for several reasons. (*Id.* ¶¶ 51, 53, 128-29.) In Count II, Redmon alleges that Whirlpool breached implied warranties that the dishwashers were merchantable and fit for their ordinary purpose.

2

Whirlpool first argues that plaintiff's breach-of-warranty claims fail because the problem with plaintiff's dishwasher arose after the expiration of the one-year limited Written Warranty. Redmon alleges that he bought his Whirlpool dishwasher in 2017 from Frank's Appliances and that it began leaking in 2020. The Written Warranty states:

> For one year from the date of purchase, when this major appliance is installed, operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation . . . (hereafter "Whirlpool") will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product. . . .
>
> YOUR SOLE AND EXCLUSIVE REMEDY UNDER THIS LIMITED WARRANTY SHALL BE PRODUCT REPAIR AS PROVIDED HEREIN.
> . . .
> IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW.

(2d Am. Compl., Ex. A, at 1.) In response, plaintiff contends that he has alleged that this warranty fails of its essential purpose and that its durational limitation is unenforceable as unconscionable, both procedurally and substantively, and that these inquiries are fact-intensive and thus inappropriate to resolve on a motion to dismiss. Whirlpool replies that plaintiff has not adequately pleaded either type of unconscionability or that the warranty fails of its essential purpose.

Under Illinois law, express warranties of limited duration cover only defects that become apparent during the warranty period. *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. Ct. 2005). A contractual clause such as a warranty's time limitation, however, "may be unenforceable if it is either procedurally or substantively unconscionable." *Singer v. Sunbeam Prods., Inc.*, No. 15 C 1783, 2016 WL 1697777, at *4 (N.D. Ill. Apr. 28, 2016) (applying Illinois law). Whether a contract is unconscionable is a question of law to be decided by the court. *Darne v. Ford Motor Co.*, No. 13 C 3594, 2015 WL 9259455, at *7 (N.D. Ill. Dec. 18, 2015) (applying Illinois law). Furthermore, "[w]hen a contract contains a limitation of remedy but that remedy fails of its essential purpose, it is as if that limitation of remedy does not exist for purposes of the damages to which a plaintiff is entitled for breach of warranty." *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 618 (Ill. 2006).

Unconscionability can be either "procedural" or "substantive" or a combination of both. *Id.* at 622. Procedural unconscionability accounts for a party's relative lack of bargaining power or lack of meaningful choice and can refer to a situation where a term is so difficult for a party to find or understand that he cannot have been aware he was agreeing to it. *Id.*; *Est. of Davis v. Wells Fargo Bank*, 633 F.3d 529, 535 (7th Cir. 2011) (applying Illinois law); *Singer*, 2016 WL 1697777, at *4. Substantive unconscionability refers to contractual terms that are inordinately one-sided in one party's favor. *Davis*, 633 F.3d at 535. Plaintiff asserts that he has plausibly

3

alleged that the durational limitation is unconscionable because Whirlpool had knowledge of the allegedly defective diverter shaft seal at the time plaintiff purchased his dishwasher. The Court agrees. Whether characterized as procedural or substantive, "[a] determination of unconscionability may turn on a showing of acts of bad faith such as concealments [or] misrepresentations." *Singer,* 2016 WL 1697777, at *4 (internal punctuation omitted) (quoting *Levey v. CitiMortgage, Inc.*, No. 07 C 2678, 2009 WL 2475222, at *4 (N.D. Ill. Aug. 10, 2009) (applying Illinois law)). Plaintiff alleges that Whirlpool knew of the latent defect as a result of customer complaints; in the complaint, plaintiff sets out seven examples of consumer complaints dating from 2013 to 2019 that appear on various websites (largely appliancepartspros.com) and pertain specifically to Whirlpool dishwashers leaking as a result of diverter motor failure. (2d Am. Compl. ¶ 72.) Plaintiff further alleges that Whirlpool had knowledge of the defect through appliance sale and repair companies, as well as, on information and belief, through product testing. (*Id.* ¶ 130.) The Court is unpersuaded by Whirlpool's argument that these allegations are insufficient to allege such knowledge. As noted above, knowledge may be alleged generally. It can be reasonably inferred from the complaint that Whirlpool knew or should have known of the diverter-shaft-seal defect at the time of plaintiff's purchase; thus, plaintiff has plausibly alleged that the express warranty's one-year limitation was unconscionable. *See Singer*, 2016 WL 1697777, at *5 (holding that, under federal pleading standards, plaintiff adequately pleaded that the terms of an express warranty were unconscionable where plaintiff alleged that defendants knew or should have known that the product at issue was prone to electrical failure and an unreasonable risk of starting a fire); *Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 WL 2609431, at *3 (N.D. Ill. June 9, 2014).

Plaintiff has also sufficiently pleaded that the warranty's exclusive remedy of product repair fails of its essential purpose. "[I]t is unusual for a remedy to fail of its essential purpose, but this typically occurs when a contract's primary remedy is repair or replacement of defective parts, and this remedy fails to put the goods in their warranted condition." *MNdustries, Inc. v. MC Mach. Sys., Inc.*, No. 17 C 7226, 2019 WL 1317744, at *2-3 (N.D. Ill. Mar. 21, 2019) (internal punctuation omitted) (quoting *Sunny Indus. v. Rockwell Int'l Corp.*, Nos. 98-2824 & 98-2875, 1999 WL 220109, at *10 (7th Cir. 1999)). A limited remedy may also fail of its essential purpose when "the repair or replacement of the defective parts takes an unreasonable amount of time or number of attempts." *Zwicky v. Freightliner Custom Chassis Corp.*, 867 N.E.2d 527, 535 (Ill. App. Ct. 2007). Plaintiff alleges that Whirlpool's limited repair warranty fails of its essential purpose because Whirlpool provides "identically defective sump assemblies" with inverted diverter shaft seals, so the replacement parts or dishwashers, like the originals, will eventually fail. (2d Am. Compl. ¶¶ 48, 64.) These facts are sufficient to plausibly allege failure of the remedy's essential purpose, which is a "fact-driven question [that is] not typically appropriate for resolution on a motion to dismiss." *MNdustries*, 2019 WL 1317744, at *3.

Next, Whirlpool contends that plaintiff's warranty claims must be dismissed because plaintiff fails to allege that he gave Whirlpool "proper notice" of these claims. (ECF No. 12, Def.'s Mem. Supp. Mot. at 7.) Whirlpool is correct that Illinois law requires a plaintiff to give the defendant "reasonable pre-suit notice before asserting a breach of warranty claim in court." *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 799 (N.D. Ill. 2016). Plaintiff, however, has alleged such pre-suit notice. He alleges that he contacted Whirlpool in early October 2020 (before this suit was filed) and notified it about the

problems he experienced with his dishwasher, and a Whirlpool representative denied his warranty claim on the ground that the warranty had expired. (2d Am. Compl. ¶ 66.) Whirlpool asserts that this was not "proper" notice because it occurred only after plaintiff had his dishwasher's sump housing, shaft seal, and diverter motor replaced in June 2020, as alleged in the complaint. But Whirlpool cites no authority in support of its argument and, in any event, plaintiff alleges that the replacement parts have the same latent defect and will eventually fail. Furthermore, a buyer can fulfill the notice requirement without providing direct notice to the seller where the seller had actual knowledge of the specific alleged defect of the particular product, *Rust-Oleum*, 155 F. Supp. 3d at 799-800, which plaintiff has alleged. Whirlpool's citation to *O'Connor v. Ford Motor Co.*, No. 19 C 5045, 2020 WL 4569699, at *6 (N.D. Ill. Aug. 7, 2020), is unavailing because the plaintiff in that case did not allege that he ever contacted the defendant about the defective product in any manner before filing suit, nor did his complaint contain allegations suggesting that the defendant had knowledge of any specific problem with the product that plaintiff had purchased.

Whirlpool next argues that plaintiff fails to allege a breach of warranty because his warranty is limited to repair, and a breach of the promise to repair cannot occur unless Whirlpool refuses or fails to repair plaintiff's dishwasher. In Whirlpool's view, because plaintiff had "already repaired" his dishwasher when he called Whirlpool, he is unable to allege breach, and furthermore, he fails to plausibly allege that his dishwasher could not have been repaired. (Def.'s Mem. Supp. Mot. at 8-9.) These unsupported arguments miss the mark. As explained above, plaintiff has plausibly alleged that his repairs were a stopgap because the diverter-shaft-seal defect exists in the replacements, and at any rate, Whirlpool failed to offer plaintiff a remedy.

Whirlpool also asserts that to the extent plaintiff's breach-of-express-warranty claim is based on representations outside the limited repair warranty, it fails because plaintiff does not sufficiently allege the existence of any such warranties, and because the limited repair warranty contains an explicit "DISCLAIMER OF REPRESENTATIONS OUTSIDE OF WARRANTY," which states that "Whirlpool makes no representations about the quality, durability, or need for service or repair of this major appliance other than the representations contained in this warranty. If you want a longer or more comprehensive warranty than the limited warranty that comes with this major appliance, you should ask Whirlpool or your retailer about buying an extended warranty." (2d Am. Compl., Ex. A.) Under Illinois law, an express warranty is created under the following circumstances:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

810 ILCS 5/2-313. Plaintiff contends that disclaimers that conflict with express warranties are ineffective and that he adequately alleges the existence of other express warranties made by

5

Whirlpool outside of the limited repair warranty in that he alleges that a salesperson told him that KitchenAid was "top of the line" and that Whirlpool made "representations" in its "written materials related to KitchenAid[-]branded [dishwashers'] quality and reliability." (ECF No. 22, Pl.'s Mem. Opp'n Def.'s Mot. at 8-9 (citing 2d Am. Compl. ¶¶ 58-59).) It is true that disclaimers that are inconsistent with express warranties are invalid. *See, e.g.*, *Snelten v. Schmidt Implement Co.*, 647 N.E.2d 1071, 1075 (Ill. App. Ct. 1995). But plaintiff does not allege facts indicating how or why the third-party salesperson's statement is attributable to Whirlpool. And, aside from plaintiff's allegation that Whirlpool expressly warranted "in its Owner Manuals and User Instructions that the Dishwashers are free from defects for one year," (2d Am. Compl. ¶ 45), plaintiff does not set forth sufficient facts to put Whirlpool on notice of any other specific representations Whirlpool allegedly made about its dishwashers' quality and reliability.[1] Thus, to the extent Count I is based on the existence of express warranties beyond Exhibit A to the complaint and the warranty described in paragraph 45 of the complaint, it is dismissed without prejudice.

Whirlpool's final argument regarding the warranty claims is that plaintiff's breach-of-implied-warranty claim in Count II must be dismissed for lack of privity. As a general rule, absent an allegation of personal injury, implied warranties arise under Illinois law only between buyers and immediate sellers. *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 704 (N.D. Ill. 2016) (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (Ill. 1988)). There are exceptions, two of which plaintiff says his allegations satisfy—the direct-relationship exception and the third-party-beneficiary exception. The direct-relationship exception applies when there are "direct dealings" between a buyer and a manufacturer. *Id.* at 705. Plaintiff asserts that he sufficiently alleges such dealings "by relying on [Whirlpool's] written advertisements and warranties." (Pl.'s Mem. Opp'n Def.'s Mot. at 9.) In support, plaintiff cites three non-binding federal district court decisions. The Court respectfully declines to follow those decisions because it concurs with other federal district courts that are unpersuaded the Illinois Supreme Court would conclude that such materials alone give rise to "direct dealings." *See In re VTech Data Breach Litig.*, No. 15 C 10889, 2018 WL 1863953, at *5 (N.D. Ill. Apr. 18, 2018) ("I am not persuaded that the Illinois Supreme Court would conclude that advertising alone creates a direct relationship between a manufacturer and a customer (and no such binding authority has been cited), especially where, as here, there is no allegation that a plaintiff viewed a particular representation in an ad and relied on the representation in making the purchase."); *Guajardo v. Skechers USA, Inc.*, No. 4:19-CV-04104-SLD-JEH, 2020 WL 7038950, at *4 (C.D. Ill. Nov. 30, 2020) (dismissing implied-warranty claim on the ground that plaintiff's allegations were insufficient to satisfy the direct-relationship privity exception where plaintiff failed to allege any contact with the manufacturer or that she relied on any particular advertising statement); *Quitno v. Gen. Motors, LLC*, No. 1:18-CV-07598, 2020 WL 777273, at *5 (N.D. Ill. Feb. 18, 2020) (dismissing implied-warranty claim for lack of privity where plaintiff failed to plead that defendant directly dealt with her); *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1121-24 (N.D. Ill. 2019) (dismissing implied-warranty claim and rejecting plaintiff's

---

[1] Plaintiff's allegation in paragraph 44 of the complaint that Whirlpool expressly warrants "via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models" that the dishwashers are "fit for the ordinary purpose for which they are sold" is too vague to comply with Rule 8's notice requirement.

argument that advertising materials alone can establish direct dealing under Illinois law). Likewise, plaintiff's allegations do not implicate the third-party-beneficiary exception. That exception applies where "the manufacturer knew the identity, purpose and requirements" of the customer and "manufactured or delivered the goods specifically to meet those requirements," *Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980), and there are no such allegations here. Plaintiff correctly points out that the privity inquiry is fact-intensive and often not appropriate to determine at the dismissal stage, *see Elward*, 214 F. Supp. 3d at 704-05, but plaintiff has failed to plead any facts that permit a reasonable inference that an exception to the privity requirement could apply here. Therefore, Count II will be dismissed without prejudice.

B.      **Breach of Contract (Count III)**

Whirlpool contends that plaintiff's claim for breach of contract (which is pleaded in the alternative to the breach-of-warranty claims) fails for the same reasons Whirlpool says the warranty claims fail. Plaintiff's claim for breach of express warranty has in part survived defendant's motion, so this argument is without merit. Whirlpool also contends that the same privity issues that doom plaintiff's implied-warranty claim also "doom any breach of contract claim on the basis of third-party representations." (Def.'s Mem. Supp. Mot. at 10 (internal punctuation omitted).) Plaintiff's breach-of-contract claim, however, is not based on third-party representations. Whirlpool's motion to dismiss will be denied as to Count III.

C.      **Unjust Enrichment (Count IV)**

Whirlpool asserts that plaintiff's claim for unjust enrichment should be dismissed, for several reasons: (1) damages for unjust enrichment are unavailable where the parties have a contract; (2) Illinois does not recognize unjust enrichment as an independent cause of action, and plaintiff has not adequately pleaded another cause of action that would support recovery in unjust enrichment; and (3) plaintiff has not adequately pleaded "Whirlpool's knowledge or any fraudulent conduct that could form the basis of an unjust enrichment claim." (*Id.* at 10-11.)

The fact that plaintiff's unjust-enrichment claim is pleaded in the alternative to his contract claim disposes of Whirlpool's first argument. Whirlpool's second and third arguments are without merit because plaintiff has plausibly pleaded at least one claim that would support recovery in unjust enrichment, *see Vanzant v. Hill's Pet Nutrition, Inc.,* 934 F.3d 730, 740 (7th Cir. 2019) (holding that request for restitution based on unjust enrichment survived dismissal where statutory-fraud claim survived dismissal), and the Court has rejected Whirlpool's contention that plaintiff has insufficiently pleaded Whirlpool's knowledge of the latent defect.

Whirlpool's motion to dismiss will be denied as to Count IV.

D.      **Statutory Fraud (Count V)**

Count V is a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "Consumer Fraud Act" or the "Act"). "To recover on a claim under the Act, a plaintiff must plead and prove that the defendant committed a deceptive or

7

unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant*, 934 F.3d at 736. Deceptive acts and unfair acts are distinct categories of conduct. *Id.* at 738. A Consumer Fraud Act claim may be premised on either or both, but the two categories have different pleading standards; deceptive conduct must be pleaded with particularity under Rule 9(b), yet unfair conduct need only meet the standards of Rule 8. *Id.* at 738-39. "Unfair" conduct, under Illinois law, encompasses that which "offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to consumers." *Id.* (internal punctuation and citation omitted). Reading the complaint in the light most favorable to plaintiff, plaintiff alleges that Whirlpool engaged in both deceptive and unfair conduct.

Whirlpool first argues that plaintiff fails to "identify an actionable" misrepresentation. (Def.'s Mem. Supp. Mot. at 12.) To the extent that plaintiff's Consumer Fraud Act claim is based on any affirmative misrepresentation by Whirlpool, the Court agrees. Plaintiff alleges that Whirlpool violated the statute, in part, by "representing that its . . . [d]ishwashers have characteristics or benefits that they do not have and that the . . . [d]ishwashers are of a particular standard, quality or grade when they are of another." (2d Am. Compl. ¶ 188 (internal punctuation omitted).) Plaintiff, however, fails to supply any of those alleged misrepresentations or plead them with particularity. Plaintiff points out that he has alleged that Whirlpool "boasted" in its marketing materials that "No One Has Fewer Repairs 18 Years in a Row." (*Id.* ¶ 4.)[2] But that statement is not alleged to have been false or deceptive; plaintiff merely cites it for the proposition that as a result, he formed the belief that Whirlpool's dishwashers were of high quality.

The lack of adequately-pleaded affirmative misrepresentations, however, does not end the analysis because plaintiff's statutory-fraud claim is also based in part on Whirlpool's alleged "active conceal[ment]" of, and failure to disclose, the latent defect in the dishwasher and the "eventual leaking that was known to occur." (*Id.* ¶ 187.) Plaintiff further alleges that Whirlpool intended that he and other consumers rely on the omission and that it caused him damages. These allegations are sufficient to state a claim under the Consumer Fraud Act. Whirlpool argues that plaintiff cannot base his claim under the Act "on an alleged omission" because it had no duty to disclose anything to him. (Def.'s Mem. Supp. Mot. at 13.) This argument misstates Illinois law, under which "[a]n omission or concealment of a material fact in the conduct of trade or commerce constitutes [statutory] consumer fraud," and "it is unnecessary to plead a common law duty to disclose." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996). Whirlpool also argues that plaintiff has failed to plausibly allege that Whirlpool knew about the diverter-shaft-seal defect at any point in time, but the Court has rejected that argument, see above.

---

[2] Plaintiff also asserts, without developing the argument or citing authority, that Whirlpool's warranty is an "actionable misrepresentation[]" under the Consumer Fraud Act because "it purports to offer repair or replacement of defects within one year of sale," but is "incapable of being properly repaired or replaced with a non-defective product." (Pl.'s Mem. Opp'n Def.'s Mot. at 12.) This is essentially an argument that Whirlpool made a contractual promise it could not keep, which is not actionable under the statute. *See Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005)).

Whirlpool's motion to dismiss will be denied as to Count V.

### E. Negligence (Count VI)

Next, Whirlpool argues that plaintiff's negligence claim is barred by the economic-loss doctrine. Plaintiff states that he "concedes" this claim, (Pl.'s Mem. Opp'n Def.'s Mot. at 2), and the Court sees no possibility of successful amendment, so it will be dismissed with prejudice.

### F. Fraudulent Concealment (Count VII)

Count VII is a state-law claim for fraudulent concealment. Illinois "recognizes the common-law tort of fraudulent concealment, which requires a plaintiff to allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Squires-Cannon v. Forest Pres. Dist.*, 897 F.3d 797, 805 (7th Cir. 2018) (internal punctuation and citation omitted). "The duty to disclose arises only in certain situations, including where the plaintiff and defendant are in a fiduciary or confidential relationship and where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.* (internal punctuation and citations omitted). The standard for identifying a special-trust relationship is extremely similar to that of a fiduciary relationship. *Id.* at 806. Rule 9(b)'s heightened pleading standard applies to fraudulent-concealment claims. *Id.* at 805.

Whirlpool contends that plaintiff has failed to plead circumstances indicating that it owed plaintiff any duty. The Court agrees. Plaintiff does not allege any facts plausibly suggesting a fiduciary, confidential, or special-trust relationship with Whirlpool. Plaintiff maintains that because Whirlpool had "exclusive knowledge and experience regarding the design and manufacture of the Dishwashers," it was in a position of superiority that triggered a duty to speak. (Pl.'s Mem. Opp'n Def.'s Mot. at 14-15.) But "[a]symmetric information alone does not show the degree of dominance needed to establish a special trust relationship," *Squires-Cannon*, 897 F.3d at 806, and plaintiff alleges no facts beyond asymmetric information. Accordingly, Count VII will be dismissed without prejudice.

### G. Injunctive Relief

Whirlpool asserts that plaintiff's request for injunctive relief should be dismissed because, absent factual allegations that indicate a likelihood of future injury, plaintiff lacks standing to pursue such relief. Plaintiff states that he "concedes" this claim, (Pl.'s Mem. Opp'n Def.'s Mot. at 2), and the Court sees no possibility of successful amendment, so it is dismissed with prejudice.

## CONCLUSION

Defendant Whirlpool Corporation's motion to dismiss the Second Amended Class Action Complaint [11] is granted in part and denied in part. The Court dismisses with prejudice plaintiff's claims for negligence (Count VI) and injunctive relief. The Court dismisses without

prejudice plaintiff's claims for (1) breach of express warranty in Count I, to the extent that it is based on the existence of express warranties beyond Exhibit A to the complaint and the warranty described in paragraph 45 of the complaint; (2) breach of implied warranty (Count II); and (3) fraudulent concealment (Count VII). The remainder of defendant's motion is denied.

**DATE:** April 28, 2020

*Ronald A. Guzmán*

**Hon. Ronald A. Guzmán**
**United States District Judge**